**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| HUGH CONTREARUS, | CASE NO. 3:15-CV-0783 |
| Petitioner, | JUDGE JOHN R. ADAMS |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| MARK HOOKS, Warden, | |
| | **REPORT AND RECOMMENDATION** |
| Respondent. | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Hugh Contrearus ("Contrearus" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Contrearus*, Case No. CR-11-3079 (Lucas County March 19, 2012).  (Doc. No. 13-1 at Ex. 5.)  For the following reasons, the magistrate judge recommends that the petition be DISMISSED with prejudice.

## I. Introduction

The state appellate court that affirmed Petitioner's conviction and sentence on direct appeal noted that Petitioner's conviction "stemmed from the attack and rape of a victim on the night of June 9, 2011, in a field next to a Fricker's restaurant in Maumee, Ohio." *State v. Contrearus*, No. L-12-1114, 2014-Ohio-996, 2014 WL 1343090, at *1 (Ohio Ct. App. March 7, 2014).

## II. State-Court Proceedings

### A. Indictment and Guilty Plea

On December 22, 2011, the State issued an indictment charging Petitioner with one count of rape in violation of Ohio Rev. Code § 2907.02(A)(2) and (B), a first-degree felony. (Doc. No. 13-1 at Ex. 1.) At his arraignment, "it became clear that [Contrearus], a Mexican citizen whose native language is Spanish, did not fully understand the proceedings. The court, therefore, continued the case and appointed an interpreter to assist [Contrearus] and his counsel with his defense." *Contrearus*, 2014 WL 1343090, at *1. (*See also* Doc. No. 13-2.) Contrearus later entered a plea of not guilty. (Doc. No. 13-3 at 6.)

On March 19, 2012, Contrearus retracted his plea of not guilty and pled guilty to the lesser offense of attempt to commit rape in violation of Ohio Rev. Code §§ 2923.02 and 2907.02(A)(2) and (B), a second-degree felony. (Doc. No. 13-1 at Ex. 2.) The court conducted a hearing that day. (Doc. No. 13-4.) Following a lengthy colloquy through the interpreter, the trial court accepted Contrearus' guilty plea and found him guilty of attempted rape. (*Id.* at 5-24.) The state appellate court provided the following

2

account of the sentencing hearing:

> {¶ 8} The record reveals that at the start of the plea hearing below, appellant's trial counsel informed the court that he and the interpreter had reviewed the plea form with appellant. The court then, through the interpreter, confirmed appellant's name, age, level of education, that he was not at that time under the influence of any drug or alcohol, and that no one had promised him anything in exchange for his plea except for the state's agreement to amend the charge from rape to attempted rape. The court then confirmed appellant's understanding that he was subject to a potential prison sentence of eight years, that he would most certainly be deported at some time in the future, and that if he were permitted to remain in the United States he would receive a sexually-oriented offender classification which would include certain registration and verification requirements. After further confirming that appellant had reviewed the plea form with his counsel and interpreter, and that he was satisfied with his counsel's representation and his interpreter's assistance, the following discussion occurred.
>
> THE COURT: I want to make sure you understand the charge that you are pleading guilty to. And the amended charge now reads that you, on or about the 9th day of June in 2011 while in Lucas County, Ohio, did knowingly attempt to engage in sexual conduct with another, when you purposely compelled the other person—that means the victim—to submit by force or threat of force. That's a charge of attempted rape in violation of 2907.02(B).
>
> Now, Mr. Contrearus, the two words "sexual conduct" have a specific meaning in the law. Mr. Neumeyer, did you define what that means for him and was that a specific point of discussion between you and Mr. Contrearus?
>
> MR. NEUMEYER: Yes, Your Honor.
>
> THE COURT: Is that accurate, Mr. Contrearus, that you had this conversation about what sexual conduct means?
>
> THE INTERPRETER: Yes.
>
> THE COURT: And Mr. Contrearus, are you satisfied that you have a complete understanding as to what the two words "sexual conduct" means as it relates to the charge that you were indicted with?
>
> THE DEFENDANT: Si.

3

THE COURT: And the amended charge to which you are pleading to?

THE INTERPRETER: Yes.

THE COURT: Sir, do you understand that by entering a plea of guilty, you are making a complete admission that you committed the offense in the amended charge?

THE INTERPRETER: Yes.

THE COURT: And did you say yes?

THE INTERPRETER: Yes. I'm sorry.

THE COURT: I'm sorry. And do you understand that as a result of this guilty plea, I'm going to enter a finding of guilt against you and that I may proceed with sentencing here today?

THE INTERPRETER: Yes.

{¶ 9} The court then proceeded to expressly inform appellant of each of the constitutional rights he was waiving by entering the guilty plea, and confirmed that appellant understood each of those rights and understood that he was waiving those rights by entering a guilty plea. Upon further questioning by the court, appellant expressed his understanding that he was facing a maximum prison sentence of eight years, a mandatory five-year period of postrelease control, and the ramifications for violating the terms of postrelease control. After informing appellant of his appellate rights, the court asked appellant if it was his desire to waive his constitutional rights and enter a plea of guilty. Appellant responded "yes." The court asked appellant if he had any questions for the court, his attorney or his interpreter, or any questions regarding the allegations of the offense to which he was pleading guilty. Appellant stated that he did not. The court then continued:

THE COURT: And again, you understand that by entering a plea of guilty to the charge of attempted rape, you're telling me that you committed that offense and I will enter a finding of guilt based on that?

THE INTERPRETER: Yes.

THE COURT: Mr. Contrearus, knowing all that I put on the record here today, how do you plead to the charge of attempt to commit rape, a felony of the second degree, sir?

THE INTERPRETER: Guilty.

THE COURT: And sir, I need to ask you, why are you entering a plea of guilty to this charge?

THE INTERPRETER: Because on the day the event happened, I was drunk. I didn't know what I was doing and I'm sorry.

{¶ 10} This is the statement that appellant asserts demonstrates he did not fully understand the offense with which he was charged and to which he was pleading guilty. Following this statement, however, the court continued to question appellant and his counsel as follows.

THE COURT: Well, I have a couple more questions. I think I understand what he means when he says he didn't know what he was doing, but we need to explore that. In the State of Ohio, voluntary intoxication is not a defense. Mr. Neumeyer, has this been a point of discussion that you've had between yourself and your client?

MR. NEUMEYER: Yes, Your Honor.

THE COURT: And do you feel he understands that?

MR. NEUMEYER: Yes, Your Honor. We spoke last Thursday about this. I informed him the court would ask him why he is entering this plea today. We discussed it. He knows what he did was wrong. He's just having a little trouble putting it into words. As we discussed and he can confirm, he did drink that night. He did do the act detailed in the indictment. He knows that it was wrong.

THE COURT: Mr. Contrearus, I took your statement to mean that you feel that had you not been drinking that night, it would not have happened?

THE INTERPRETER: Yes.

THE COURT: But I want to make sure that you're acknowledging that it did, in fact, happen; is that correct?

THE INTERPRETER: Yes.

{¶ 11} The court then handed appellant the plea form and instructed his attorney and interpreter to review the form again with appellant in open court. When the three had finished, the court noted for the record that appellant had reviewed the written plea with his counsel and interpreter and had asked a question or two. The court then asked appellant if his

> questions had been answered to his satisfaction. He responded that they had. The court then found that appellant had made a knowing, intelligent and voluntary plea of guilty to the charge of attempted rape, accepted the plea and found him guilty.

*Contrearus*, 2014 WL 1343090, at \*\*2-4.

The trial court then sentenced Contrearus to eight years in prison and five years of post-release control upon release from prison and classified him as a Tier III sex offender. (Doc. No. 13-4 at 35-45; Doc. No. 13-1 at Exs. 3, 5.)

**B.     Direct Appeal**

Petitioner, through new counsel, filed a timely notice of appeal. (Doc. No. 13-1 at Ex. 7.) In his appellate brief, he asserted the following single assignment of error: Plea hearing was not in compliance with Crim. R. 11(C). (Doc. No. 13-1 at Ex. 8.)

On March 7, 2014, the state appellate court affirmed the judgment of the trial court. *Contrearus*, 2014 WL 1343090, at \*4. (Doc. No. 13-1 at Ex. 10.) A review of the Ohio Supreme Court's docket indicates Contrearus did not appeal the state appellate court's judgment.

**C.     Application to Reopen Direct Appeal**

On October 14, 2014, Contrearus, *pro se,* filed a delayed application for reopening his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure in the state appellate court. (Doc. No. 13-1 at Ex. 11.) He claimed his appellate counsel failed to raise the following assignments of error:

1.    Trial court errored [*sic*] when it sentenced Appellant to the maximum without meeting statutory requirements[.]

2.    Trial court abused it's [*sic*] descretion [*sic*] when it sentenced Appellant to the maximum[.]

6

    3.    Trial court committed plain error when it sentence[d] Appellant to the maximum sentence without being apprised that Appellant was a first time offender[.]

    4.    Trial counsel was constitutionally ineffective during sentencing[.]

(*Id.* at 58, 60, 61.) He argued that his application should be accepted despite its untimeliness because he was not proficient in English and his appellate counsel did not notify him of his appeal or the appellate court's decision. (*Id.* at 55-56.) On February 4, 2015, the court denied the application as untimely. (Doc. No. 13-1 at Ex. 14.)

On March 18, 2015, Contrearus, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court. (Doc. No. 13-1 at Ex. 15.) In his memorandum in support of jurisdiction, he asserted the following propositions of law:

    1.    Trial court erred when it sentenced Appellant to the maximum without meeting statutory requirements.

    2.    Trial court abused it's [*sic*] discretion when it sentenced Appellant to maximum.

    3.    Trial court committed plain error when it sentenced Appellant to the maximum sentence without being apprised that Appellant was a first time offender.

    4.    Trail [*sic*] counsel was constitutionally ineffective during sentencing.

    5.    Appellant received ineffective assistance of counsel during appeal.

    6.    The Sixth District Court of Appeals erred when it failed to find good cause for a delayed 26(B) pursuant to [Ohio R. App. P.] 26(B)(2)(b).

(Doc. No. 13-1 at Ex. 16.) On May 20, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. No. 13-1 at Ex. 18.)

### III. Proceedings in this Court

On April 22, 2015, Contrearus, *pro se*, filed his habeas petition in this Court.

7

(Doc. No. 1.) He asserts the following six grounds for relief:

1. Trial court erred when it sentenced petitioner to the maximum.

   Supporting Facts: The trial court did not have sufficient information to sentence petitioner, there was no PSI report and petitioner did not have a record.

2. Trial court abused it's [*sic*] discretion when it sentenced petitioner to the maximum.

   Supporting Facts: The trial court had limited information about petitioner and was required to hear more aggravating circumstances to impose maximum sentence.

3. Trial court committed plain error when it sentenced petitioner to the maximum.

   Supporting Facts: The trial court did not conduct a PSI before sentencing petitioner and knew only what counsel provided to assess petitioner's sentence.

4. Trial counsel was constitutionally ineffective during sentencing.

   Supporting Facts: Trial counsel erred in waiving PSI and for failing to proffer mitigating evidence at sentencing. Counsel failed to inform the court that petitioner had no prior felony conviction.

5. Appellant received ineffective assistance of counsel during appeal.

   Supporting Facts: Appeals counsel was ineffective for not raising the errors that petitioner raised in his motion for re-opening. The three sentencing errors and the ineffective assistance of trial counsel during sentencing.

6. The Sixth District Court of Appeals erred when it failed to find good cause for a delayed 26(B) pursuant to App.R. 26(B)(2)(b).

   Supporting Facts: The appeals court failed to find good cause to hear petitioner's claims. Through out [*sic*] the appellate proceeding appellate counsel never contacted petitioner. Petitioner does not speak, read, or write fluently in English. Petitioner was not informed that his appeal had been affirmed prior to his deadlines to file timely appeals. Due to the language barrier petitioner uses assistance from an other [*sic*] inmate to draft his claims since he is unable to.

(*Id.* at 4, 5, 6, 7, 8.)

Also on April 22, 2015, Contrearus filed a motion to stay his case and hold it in abeyance. (Doc. No. 4.) On June 23, 2015, he moved to withdraw his motion to stay, which this Court granted. (Doc. Nos. 6, 12.)

After requesting and receiving additional time, the State filed an answer/return of writ on December 3, 2015. (Doc. No. 13.) After requesting and receiving additional time, Contrearus filed a traverse on February 22, 2016. (Doc. No. 16.) The State replied on March 8, 2016. (Doc. No. 17.)

### IV. Procedural and Related Issues

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Lucas County, Ohio sentenced Petitioner. (Doc. No. 13-1 at Exs. 3, 5.) Lucas County is within this Court's geographic jurisdiction. *See* 28 U.S.C. § 115(a). Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

**B.     Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner

9

was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  See *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and, generally, a federal court must dismiss his petition.  See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Where, however, there are no longer any state court remedies still available to a petitioner with respect to a particular claim, this Court may deem that claim procedurally defaulted.  See *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law,' *Castille*[, 489 U.S. at 351].").

Generally, a federal court must decline to review  "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted a claim, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

    **1.**    **Petitioner's Grounds One through Four**

In his first through third grounds for relief, Contrearus essentially presents one claim, that the trial court erred by imposing the maximum sentence allowed under Ohio law for his offense of attempted rape.  (*See* Doc. No. 1 at 4-6.)  In ground four, he argues that his trial counsel was ineffective at his sentencing hearing; specifically, for failing to request a presentencing investigation report ("PSI"), offer mitigating evidence, and inform the court that he had no prior felony convictions.  (*Id.* at 7.)  The State argues that these claims are procedurally defaulted because Contrearus did not present the claims on direct appeal.  (Doc. No. 13 at 17, 20.)  The Court agrees.

Contrearus' sentencing and ineffective-assistance claims arise out of the record of proceedings in the trial court, and Contrearus could have raised them on direct appeal.  Instead, he raised only one claim on direct appeal, *i.e.*, the voluntariness of his guilty plea.  (*See* Doc. No. 13-1 at Ex. 8.)  Under Ohio law, *res judicata* now prohibits him from raising the sentencing and ineffective-assistance claims in any post-conviction

11

proceeding. *See State v. Cole*, 2 Ohio St. 3d 112, 113 (Ohio 1982); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). Thus, there are no longer any state-court remedies still available to Contrearus with respect to his first through fourth grounds, and this Court may deem the claims procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Contrearus argues that his appellate counsel's failure to raise the claims on direct appeal provides "cause" to excuse the claims' procedural default. (Doc. No. 16 at 1-2.) He claims that he "was left in the dark by [a]ppellate counsel" and did not even know that counsel was appealing his case at all. (*Id.*) "Attorney error that constitutes ineffective assistance of counsel is cause." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991). Claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim, however, if the ineffective-assistance claim itself is procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Contrearus filed an application pursuant to Ohio Appellate Rule 26(B) in state court asserting that his appellate counsel was ineffective for failing to raise the sentencing and ineffective-assistance claims he now asserts. (Doc. No. 13-1 at Ex. 11.) Rule 26(B) provides an avenue for criminal defendant to reopen their direct appeal based on a claim of ineffective assistance of appellate counsel. Ohio R. App. P.

12

26(B)(1). It must be filed within ninety days of the appellate judgement, however, absent a showing of good cause. *Id.* The state appellate court denied Contrearus' Rule 26(B) application as untimely, rejecting his argument that he had "good cause" for the application's delay. (Doc. No. 13-1 at Ex. 14.) Dismissal of a Rule 26(B) application on timeliness grounds is an adequate and independent state procedural bar preventing habeas review. *See, e.g., Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("Because the timeliness requirements of Rule 26(B) were firmly established and regularly followed by September 1998, they are an adequate and independent state procedural bar."); *Fautenberry v. Mitchell*, 515 F.3d 614, 640–41 (6th Cir. 2008)). Contrearus did not comply with Rule 26(B)'s time requirement, and the state appellate court did not find good cause for his delay. The appellate counsel ineffective-assistance claim asserted in his Rule 26(B) application, therefore, is procedurally defaulted, and Petitioner cannot assert the ineffectiveness of his appellate counsel as "cause" for the procedural default of his first four habeas claims unless he can establish "cause and prejudice" to excuse the procedural default of his appellate counsel ineffective-assistance claim as well.[1]

    Contrearus presents two causes for the untimely filing of his Rule 26(B) application and resulting procedural default of his appellate counsel ineffective-assistance claim – essentially the same causes he asserted unsuccessfully in state

---

[1] Moreover, the Sixth Circuit has held that raising an ineffective-assistance claim in a Rule 26(B) application based on appellate counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review, because "the two claims are analytically distinct." *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005).

court.  First, he contends that his inability to speak, read, or write fluently in English prevented him from filing his application within the prescribed time period.  (Doc. No. 16 at 2-3.)  It is well-established, however, that "[c]ause for procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, . . . impeded his efforts to comply with the State's procedural rule."  *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (emphasis original) (citations and internal quotations omitted); *Murray v. Carrier*, 447 U.S. 478, 488 (1986).  Indeed, the Sixth Circuit specifically has held that a petitioner's "unfamiliarity with the English language is insufficient to establish cause to excuse his procedural default because such alleged unfamiliarity is not 'external to [his] defense.'"  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Murray,* 447 U.S. at 488).[2]

Contrearus' second cause for the untimeliness of his Rule 26(B) application is his appellate counsel's failure to advise him of the appellate court's ruling affirming the trial court judgment and the deadline for filing a Rule 26(B) motion.  (Doc. 16 at 1-2.)  This argument also fails.

Where there is no constitutional right to counsel, a petitioner cannot claim constitutionally ineffective assistance of counsel.  *Coleman*, 501 U.S. at 752.  Generally, "[t]here is no constitutional right to an attorney in state post-conviction proceedings."  *Id*.

---

[2]  Contrearus cites two cases to support the proposition that a defendant's inability to speak, read or write English is "good cause for delay" and grounds for ''equitable tolling."  (Doc. No. 16 at 3 (citing *Pabon v. Mohonoy,* 654 F.3d 385, 392 (3d Cir. 2011), and *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006)).  But those cases, as Contrearus notes himself, concern the equitable tolling of the statute of limitations governing a habeas petition, not cause to excuse the procedural default of a habeas claim.

(internal citations omitted).  The Sixth Circuit repeatedly has held that because a Rule 26(B) proceeding is a separate collateral proceeding from the original appeal, petitioners have no constitutional right to assistance of counsel in such proceedings. *See, e.g.*, *Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005).  It follows, therefore, that appellate counsel's conduct in connection with a Rule 26(B) application cannot establish ineffective assistance of counsel or, of relevance here, cause to overcome a procedural default.  *See, e.g., Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (appellate counsel's failure to appeal denial of Rule 26(B) application to Ohio Supreme Court not sufficient cause); *Scuba v. Brigano*, 527 F.3d 479, 489 (6th Cir. 2007) (appellate counsel's failure to file a timely Rule 26(B) application on petitioner's behalf not sufficient cause).  In fact, the Sixth Circuit specifically has applied this rule where appellate counsel failed to notify a petitioner of the Rule 26(B) deadline.  *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010) ("As Tolliver was not entitled to representation for his Rule 26(B) application, any poor advice he received from an attorney cannot establish cause for his default.").[3]

Thus, Contrearus' appellate counsel's alleged failure to advise him about the appellate court's ruling and the deadline for filing a Rule 26(B) application does not constitute cause to excuse the procedural default of his appellate counsel ineffective-

---

[3] In *Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014), the Sixth Circuit determined that appellate counsel's failure to notify a defendant regarding certain triggers and filing deadlines for a post-conviction petition could establish cause to overcome a procedural default under certain circumstances.  The Sixth Circuit subsequently declined to extend *Gunner* to the context of appellate counsel's alleged ineffectiveness in connection with Rule 26(B) applications.  *McClain v. Kelly*, 631 Fed. Appx. 422, 437 (6th Cir. Dec. 2015).

15

assistance claim. And because Contrearus' claim of ineffective assistance of appellate counsel is procedurally defaulted, it cannot provide cause for the procedural default of his sentencing and trial counsel ineffective-assistance claims. *Edwards,* 529 U.S. at 453.

Moreover, because Contrearus has not established "cause," the Court need not consider the "prejudice" prong of the procedural default analysis of his first four habes claims. *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000). Contrearus also does not argue that he is actually innocent to excuse his procedural default of these claims.

Accordingly, Contrearus has procedurally defaulted his first through fourth grounds for relief.

### 2. Petitioner's Ground Five

Contrearus asserts in his fifth ground for relief that his appellate counsel provided ineffective assistance by failing to raise several claims on direct appeal. (Doc. No. 1 at 8.) As explained above, Contrearus raised this claim in a delayed Rule 26(B) application to the state appellate court. (Doc. No. 13-1 at Ex. 11.) The court denied the application as untimely, resulting in this claim's procedural default. *Landrum*, 625 F.3d at 934. Moreover, Contrearus does not establish sufficient "cause" for the default based on the failure of his appellate counsel to advise him regarding Rule 26(B) or his difficulties with the English language. Nor does he present an "actual innocence" argument to excuse the default. Again, Contrearus' appellate counsel ineffective-assistance claim is procedurally defaulted.

### C. Cognizability

16

The State argues that grounds one through three, relating to Contrearus' sentencing, and ground six, challenging the state appellate court's procedural ruling on his Rule 26(B) application, are matters of state law and therefore not cognizable on federal habeas corpus.  (Doc. No. 13 at 19, 23.)  The Court agrees.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241).  *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).

**1.      Petitioner's Grounds One through Three**

Challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  In addition, a sentence that falls within the maximum penalty set by state statute generally does not constitute "cruel and unusual punishment" under the Eighth Amendment.  *Austin*, 213 F.3d at 302.   A federal habeas court only considers an alleged state court sentencing error if it violates a petitioner's federal constitutional right to due process or equal protection.  *Allsup v. Sheldon*, 2013 WL 3200641, at *18 (N.D. Ohio June 24, 2013) (Pearson, J.).

Contrearus argues that his sentence "exceeds the maximum where the

17

maximum sentence Petitioner should have received is seven years for a felony two, had his trial counsel raised the issue at sentencing." (Doc. No. 16 at 4.)  He provides no authority for this assertion, however, and the Court is unaware of any.  The maximum penalty for the offense of attempted rape in Ohio was eight years at the time of Contrearus' sentencing, which Contrearus acknowledged at that time.  (*See* Doc. No. 13-4 at 16.)  Contrearus further claims that the alleged sentencing errors "rise to the level of Due Process violations."  (*Id.* at 4-5.)  Again, however, his argument is conclusory and unavailing.

Thus, Contrearus' first through third grounds for relief, in addition to being procedurally defaulted, are not cognizable in habeas corpus.

**2.     Petitioner's Ground Six**

"[E]rrors in post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  This is "because 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'"  *Id.* (quoting *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)).  Challenges to post-conviction proceedings "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration."  *Kirby*, 794 F.2d at 247.  Accordingly, such claims cannot be brought in federal habeas proceedings.  *Id.* at 246.

Here, Contrearus claims that the state appellate court erred when it found his Rule 26(B) application untimely, rejecting his arguments of "good cause" for the delay.  (Doc. No. 1 at 8.)  As noted above, the Sixth Circuit has determined that an application under Rule 26(B) "is part of the collateral, postconviction process rather than direct

review." *Lopez*, 426 F.3d at 351. Contrearus' allegations regarding the procedural determination of the state appellate court under Rule 26(B), therefore, is not cognizable on habeas review. *See, e.g., Wolff v. Tibbles*, No. 4:11 CV 454, 2014 WL 2694227, at *10 (N.D. Ohio June 13, 2014) (Nugent, J.).

### VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: July 1, 2016  /s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**